UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH A. CAMPBELL,<br><br>　　　　　　　　　Petitioner,<br>　　v.<br><br>CITY OF SEATTLE, et al.,<br><br>　　　　　　　　　Respondents. | CASE NO. 19-CV-01105-LK<br><br>ORDER DIRECTING PETITIONER TO SHOW CAUSE |

　　　This matter comes before the Court on Respondents City of Seattle and Seattle Public Schools' Rule 41(b) Motion to Dismiss. Dkt. No. 68. For the reasons discussed below, the Court orders *pro se* Petitioner Elizabeth Campbell[1] to show cause why this action should not be dismissed with prejudice.

---

[1] Ms. Campbell's first attorneys withdrew in August 2019. Dkt. Nos. 10–12, 14. Although she thereafter obtained replacement counsel, Dkt. No. 15, he too moved to withdraw in December 2019. Dkt. Nos. 26–27. Ms. Campbell has proceeded *pro se* since February 2020, when the Court granted replacement counsel's motion to withdraw without substitution. *See* Dkt. No. 37.

ORDER DIRECTING PETITIONER TO SHOW CAUSE - 1

## I.  INTRODUCTION

In June 2019, Ms. Campbell and Discovery Park Community Alliance ("Petitioners") filed a land use petition in King County Superior Court challenging a resolution and two ordinances passed by the Seattle City Council. Dkt. No. 1 at 1; Dkt. No. 1-2 at 1–25; Dkt. No. 16 at 2–3; Dkt. No. 66 at 1; *see* Wash. Rev. Code §§ 36.70c.005 *et seq.* (establishing procedure for judicial review of land use decisions). The challenged land use decisions relate to the United States Army's disposal of the Fort Lawton Army Reserve Center under the Defense Base Closure and Realignment Act of 1990 and related federal regulations. Dkt. No. 16 at 2–3; Dkt. No. 68 at 2 (citing 10 U.S.C. § 2687; 32 C.F.R. Parts 174, 176; and 24 C.F.R. Part 586). The City, which is the "Land Redevelopment Authority" for Fort Lawton, included provisions in its redevelopment plan that would permit Seattle Public Schools to acquire up to six acres of the soon-to-be surplus federal property. Dkt. No. 16 at 2; *see also* Dkt. No. 60 at 3–7 (helpful background information).

Within 30 days of service of the petition, the City removed this action to federal district court, alleging that the court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). Dkt. No. 1 at 2 ("Most of the questions the Petition raises are under the Defense Base Closure and Realignment Act of 1990, Pub. L. No. 101-510, Title 29, Part A (codified as amended in a note following 10 U.S.C. § 2687) ('BRAC Act'), and BRAC Act regulations[.]" *See also* 28 U.S.C. § 1446(a)–(b). The City then moved to join the United States Army and Seattle Public Schools as respondents and requested that the Court order Petitioners to amend their land use petition accordingly. Dkt. No. 16 at 1. The Court granted the motion. Dkt. No. 25 at 5. Although Petitioners thereafter filed an amended petition naming the Army and Seattle Public Schools as respondents, Dkt. No. 32, they failed to properly serve the Army. *See* Dkt. No. 33 (attorney appearing for Seattle Public Schools); Dkt. No. 51 at 1–2 ("Although Petitioners served the Chief of the Army's litigation division, Petitioners failed to serve the United States Attorney for the Western District

of Washington and the Attorney General of the United States."). In June 2020, nearly a year after removal to federal court, the City and Seattle Public Schools ("Respondents") moved to dismiss Discovery Park Community Alliance for lack of counsel. Dkt. No. 45; *see* LCR 83.2(b)(4). Respondents also moved the Court to dismiss the Army without prejudice or, in the alternative, set a deadline for Petitioners to properly serve the Army. Dkt. No. 46 at 3–4.

The Court granted the first motion and dismissed Discovery Park Community Alliance from the case for failure to obtain counsel. Dkt. No. 52 at 1.[2] With respect to the latter motion, the Court noted that "[m]ore than eight months ha[d] passed" since it directed Petitioners to join the Army, and gave them 14 days to effect proper service: "If Petitioners do not properly serve the Army within that time, the Court will dismiss this case for failure to prosecute." Dkt. No. 51 at 2. When Ms. Campbell again failed to properly serve the Army, Respondents moved for dismissal under Federal Rule of Civil Procedure 41(b). Dkt. No. 54 at 2. The Court denied the motion. Dkt. No. 57 at 1. Despite its previous warning, it found the "harsh penalty" of dismissal "not warranted here" and instead directed the Clerk to serve the Army. *Id.* The Court did, however, caution Ms. Campbell that it would impose sanctions if she "continue[d] to miss deadlines or otherwise fail[ed] to comply with the Court's orders[.]" *Id.* at n.1 ("Those sanctions may include dismissal of Petitioner's case."). The Army subsequently appeared and promptly moved to dismiss the suit against it for lack of subject matter jurisdiction and failure to state a claim. Dkt. No. 60 at 8–12; *see* Fed. R. Civ. P. 12(b)(1), (6). This time the Court granted the motion and dismissed the Army without prejudice. Dkt. No. 63 at 2. It allowed Ms. Campbell 14 days to amend her petition to include claims against the Army but warned that any amendment received beyond that date would not be considered. *Id.* at 2–3. That was in April 2021. *Id.* at 3.

---

[2] Ms. Campbell and Discovery Park Community Alliance were represented by the same counsel and, once counsel withdrew, were both *pro se*. See Dkt. Nos. 15, 26–27, 37.

ORDER DIRECTING PETITIONER TO SHOW CAUSE - 3

Almost eight months passed with no activity. In December 2021, the Court ordered the parties to submit a joint status report. Dkt. No. 64. In response, and as relevant here, they indicated that Ms. Campbell planned to join as respondents the United States Department of Education, National Parks Service, Archdiocese of Seattle, and United Indians of All Tribes Foundation. Dkt. No. 66 at 2.[3] Respondents also stated their intent to file a Rule 41(b) motion to dismiss for failure to prosecute "or a dispositive motion seeking dismissal of th[e] case" if Ms. Campbell did not move to join the named parties by March 1, 2022. *Id.* at 3. The Court accordingly set March 1, 2022 as the deadline for Ms. Campbell to join additional respondents. *See* January 14, 2022 Docket Entry. That deadline came and went without Ms. Campbell filing anything. And in May 2022, Respondents again moved to dismiss this action under Rule 41(b). Dkt. No. 68 at 1. Ms. Campbell has not filed an opposition brief. Indeed, she has not filed anything since the parties' January 2022 joint status report. Dkt. No. 66.

## II.   DISCUSSION

### A.   Subject-Matter Jurisdiction and Remand Futility

Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Presuming—without deciding—that the Court lacks jurisdiction over this action, the Court finds that remand would be futile if there will be no prosecution of this action.[4] *See* 28

---

[3] In the parties' June 29, 2020 joint status report, Ms. Campbell indicated her intent to join these parties as respondents by July 3, 2020. Dkt. No. 44 at 3.

[4] Because "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears," *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989), the defendant has the burden of establishing that removal is proper, *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). As the "master of the claim," the plaintiff can generally "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Here, the petition asserts only state-law causes of action, but appears to predicate one or more claims on violations of federal regulations. *Compare* Dkt. No. 1-2 at 10–11, 13–15, 17–21 *with id.* at 22–23. *See also City of Oakland v. BP PLC*, 969 F.3d 895, 904–06 (9th Cir. 2020), *cert. denied sub nom. Chevron Corp. v. City of Oakland, California*, 210 L. Ed. 2d 916 (2021). Given the Court's finding regarding remand futility, it need not address jurisdiction at this juncture.

ORDER DIRECTING PETITIONER TO SHOW CAUSE - 4

U.S.C. § 1447(c); *Polo v. Innovnations Int'l, LLC*, 833 F.3d 1193, 1196–98 (9th Cir. 2016). Therefore, the Court proceeds to address Respondents' arguments that the case should be dismissed for failure to prosecute or comply with court orders.

**B.    Dismissal Under Rule 41(b)**

Respondents argue that dismissal under Rule 41(b) "is not unduly harsh" because Ms. Campbell's "repeated delays" have prejudiced them and prevented the Court from managing its docket. Dkt. No. 68 at 1. The Court treats Ms. Campbell's failure to oppose Respondents' motion as "an admission that the motion has merit." LCR 7(b)(2).

Federal Rule of Civil Procedure 41(b) permits a defendant to move to dismiss the action against it "[i]f the plaintiff fails to prosecute or to comply with . . . a court order[.]" This rule "is in large part a housekeeping measure related to the efficient administration of judicial business for the benefit of all litigants with cases pending." *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1279 (9th Cir. 1980). But it is also "so harsh a penalty" that it is reserved only for "extreme circumstances." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam). A district court must weigh five factors when determining whether to dismiss a case for failure to prosecute or comply with a court order: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006) (cleaned up); *accord Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

The first two factors "nearly always" tip in favor of dismissal, while the fourth "generally cuts against" it. *Spesock v. U.S. Bank, NA*, No. C18-0092-JLR, 2018 WL 5825439, at *3 (W.D. Wash. Nov. 7, 2018). The decisive factors for the Court's consideration, then, are risk of prejudice

and availability of lesser sanctions. *Id.* Although the Ninth Circuit has expressly approved dismissal when "at least four factors support dismissal" or "three factors 'strongly' support dismissal," *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1263 (9th Cir. 1992)), there is no mathematical formula because the factors are "a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything," *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). The decision to dismiss under Rule 41(b) is thus ultimately "committed to the discretion of [the] district judge[.]" *Smith v. Legacy Partners, Inc.*, No. 2:21-CV-00629-JHC, 2022 WL 2135369, at *1 (W.D. Wash. June 14, 2022). In evaluating the five factors, the Court holds *pro se* litigants like Ms. Campbell "to the same procedural rules as those parties represented by counsel." *Id.*

    1.    <u>The Public's Interest in Expeditious Resolution of Litigation</u>

The Ninth Circuit has said that "the public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999); *accord Pagtalunan*, 291 F.3d at 642. But this factor is not an automatic weight on the scale of dismissal; rather, the Court must still find unreasonable delay. *See Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986) (dismissal "must be supported by a showing of unreasonable delay," which "creates a presumption of injury to the defense"); *see also In re Phenylpropanolamine*, 460 F.3d at 1227 ("[D]elay in reaching the merits . . . is costly in money, memory, manageability, and confidence in the process."). Ms. Campbell's delay in this case was and continues to be unreasonable because she failed to timely join and serve necessary parties in accordance with the Court's deadlines. And the Court has been quite accommodating of her *pro se* status. *See* Dkt. No. 57 at 1 (denying motion to dismiss and ordering the Clerk to serve the Army). Moreover, the brunt of Ms. Campbell's activity in this case has occurred on the heels of warnings from the Court or

dismissal motions filed by Respondents. *See* Dkt. Nos. 47–48, 53, 55–56, 61; *In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994) (plaintiff's "dilatory, last-minute conduct [was] evidenced in almost all of the few pleadings filed with the court," and anything he did "was after he was forced to do so"). Ms. Campbell has, with the exception of signing the parties' latest joint status report in January 2022, done nothing to prosecute her case since the Army was dismissed in April 2021. Nor has she proffered an explanation for that delay. The first factor thus weighs heavily in favor of dismissal. *See Pagtalunan*, 291 F.3d at 642 (first factor weighed in favor of dismissal where plaintiff failed to pursue his case for four months).

2. <u>The Court's Need to Manage Its Docket</u>

The second factor strongly favors dismissal for the same reasons. *See In re Phenylpropanolamine*, 460 F.3d at 1227 ("This factor is usually reviewed in conjunction with the public's interest in expeditious resolution and, as with the first factor, we give deference to the district court 'since it knows when its docket may become unmanageable.'" (quoting *Eisen*, 31 F.3d at 1452). As explained above, Ms. Campbell has repeatedly failed to meet deadlines or otherwise prosecute her case. The Court cannot afford to dedicate scarce resources towards ensuring Ms. Campbell's compliance with basic procedural obligations. Other more diligent litigants await their day in court. *See Pagtalunan*, 291 F.3d at 642 ("It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants[.]"); *Butcher v. Ward*, No. 2:22-CV-00023-MKD, 2022 WL 3051003, at *5 (E.D. Wash. Aug. 2, 2022) (second factor weighed "strongly in favor of dismissal" where plaintiffs failed to follow the Court's orders or participate in scheduling conferences for six months); *Slaughter v. Glebe*, No. 3:15-CV-05484-BHS-JRC, 2017 WL 685778, at *3 (W.D. Wash. Jan. 11, 2017) (second factor favored dismissal where *pro se* plaintiff failed to comply with the Court's deadline and caused defendants to file a

Rule 41(b) motion, "which consumed the Court's time that could have been spent on other cases"), *report and recommendation adopted*, 2017 WL 713766 (W.D. Wash. Feb. 21, 2017).

### 3. The Risk of Prejudice to Respondents

The third factor likewise weighs in favor of dismissal. To prove prejudice, a defendant must generally show that the plaintiff's actions "impaired [its] ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Pagtalunan*, 291 F.3d at 642. But the law presumes prejudice where, as here, the Court finds unreasonable delay. *In re Phenylpropanolamine*, 460 F.3d at 1227. Ms. Campbell must therefore "proffer an excuse for delay that, if 'anything but frivolous,' shifts the burden of production to [Respondents] to show at least some actual prejudice[.]" *Id.* at 1228 (quoting *Nealey*, 662 F.2d at 1281).[5] Here, Ms. Campbell has not rebutted the presumption of prejudice because she failed to proffer any explanation for her unreasonable delay, i.e., missing the March 1, 2022 deadline. *See Pagtalunan*, 291 F.3d at 643 (third factor weighed in favor of dismissal where plaintiff "offered no clear explanations of what actions he actually took during the relevant time periods"); *Yourish*, 191 F.3d at 991–92 ("[W]e find that Plaintiffs' paltry excuse for [their] default on the judge's order indicates that there was sufficient prejudice to Defendants from the delay that this factor also strongly favors dismissal."); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987) ("[W]e place particular reliance on the district court's determination that Malone's excuse for her conduct was groundless.").

---

[5] "Prejudice normally consists of loss of evidence and memory; it may also consist of costs or burdens of litigation, although it may not consist of the mere pendency of the lawsuit itself." *In re Phenylpropanolamine*, 460 F.3d at 1228 (internal citation omitted); *see also, e.g.*, *Butcher*, 2022 WL 3051003, at *6 (plaintiffs' unreasonable delays prejudiced defendants because evidence was lost, witnesses' memories faded, and defendants accrued attorney fees and costs for the time their counsel prepared for and appeared at three scheduling conferences).

### 4. The Public Policy Favoring Disposition on the Merits

The fourth factor generally "counsels strongly against dismissal." *Hernandez*, 138 F.3d at 399. However, district courts must "weigh this factor against the plaintiff's delay and the prejudice suffered by the defendant." *Eisen*, 31 F.3d at 1454. And "a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines . . . cannot move forward toward resolution on the merits." *In re Phenylpropanolamine*, 460 F.3d at 1228; *see Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991) ("Although there is indeed a policy favoring disposition on the merits, it is the responsibility of the moving party to move towards that disposition at a reasonable pace, and to refrain from dilatory and evasive tactics."). The Ninth Circuit has accordingly "recognized that this factor 'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re Phenylpropanolamine*, 460 F.3d at 1228 (quoting *In re The Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996)).

That is the case here. As discussed at length above, Ms. Campbell has unreasonably delayed adjudication of this case. Her continued failure to respect the Court's deadlines or otherwise pursue her claim remains the exclusive impediment to disposition on the merits. The public policy favoring such resolution does not offset the heavy weight of the first three factors. *See, e.g.*, *Eisen*, 31 F.3d at 1454 ("[T]he public policy favoring the resolution of disputes on their merits does not outweigh [petitioner]'s four-year delay or the prejudice suffered by [the defendant]."); *Butcher*, 2022 WL 3051003, at *6 (finding that "the importance of disposition of cases on their merits" was "outweighed" by the other factors favoring dismissal where "Plaintiffs' numerous and unnecessary delays have precluded and limited the possibility of this case being decided on its merits.").

### 5. The Availability of Less Drastic Sanctions

The fifth and final factor likewise tips towards dismissal. "The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1986); *see also Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir. 1981) (per curiam) (a district court must consider less drastic alternatives "[e]specially when a case is still young"). Lesser sanctions include a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, dismissal of the suit unless new counsel is secured, or preclusion of claims or defenses. *Malone*, 833 F.2d at 132 n.1.

The Ninth Circuit uses three factors to assess the adequacy of a district court's exploration of less severe sanctions: "whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs Inc.*, 158 F.3d at 1057; *accord Malone*, 833 F.2d at 132. However, the Court "need not exhaust every sanction short of dismissal before finally dismissing the case[.]" *Henderson*, 779 F.2d at 1424. And there is no advance warning requirement where, as here, there is a noticed Rule 41(b) motion. *Morris*, 942 F.2d at 652; *Eisen*, 31 F.3d at 1455. Nor is the Court required to make explicit findings with respect to less severe sanctions when such sanctions have already proved unsuccessful. *See In re Phenylpropanolamine*, 460 F.3d at 1229 ("While helpful and encouraged, explicit discussion of alternatives is not necessary for a dismissal order to be upheld."); *Malone*, 833 F.2d at 132 ("[E]xplicit discussion of alternatives is unnecessary if the district court actually tries alternatives before employing the ultimate sanction of dismissal.").

Respondents urge dismissal because the Court has already "attempted other alternative remedies for noncompliance or warned Ms. Campbell of the chance of dismissal." Dkt. No. 68 at 6 ("This is not Ms. Campbell's first violation of a court order."). This is true. On August 26, 2020,

the Court warned Ms. Campbell that if she "continue[d] to miss deadlines or otherwise fail[ed] to comply with the Court's orders, the Court w[ould] impose sanctions," and that such sanctions "may include dismissal of [her] case." Dkt. No. 57 at 1 n.1. This warning satisfies the Court's obligation to consider less severe alternatives. *See Malone*, 833 F.2d at 132 ("[W]arning a plaintiff that failure to obey a court order will result in dismissal can suffice to meet the 'consideration of alternatives' requirement.").

But again, dismissal with prejudice is the ultimate penalty and should be cabined to truly extreme circumstances. The Court thus exercises its discretion to provide a final warning to Ms. Campbell. In doing so, the Court emphasizes that it is exercising caution. *See Malone*, 833 F.2d at 132 n.1 ("Providing plaintiff with a second or third chance following a procedural default is a lenient sanction, which, when met with further default, may justify imposition of the ultimate sanction of dismissal with prejudice." (cleaned up)). It further recognizes that four of the five factors weigh in favor of dismissal; indeed, at least three of them weigh strongly in favor of dismissal. *See Hernandez*, 138 F.3d at 399. Additional unreasonable delay—whether it be another missed deadline or violation of a court order—will result in dismissal with prejudice.

### III.  CONCLUSION

Ms. Campbell is ORDERED to show cause why the Court should not dismiss this case with prejudice. Should she fail to do so within 21 days of the date this order is signed, the Court will grant Respondents' motion. Dkt. No. 68. The Clerk is directed to send uncertified copies of this Order to Ms. Campbell at her last known address.

Dated this 1st day of December, 2022.

Lauren King
United States District Judge

ORDER DIRECTING PETITIONER TO SHOW CAUSE - 11